**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **09-02291-jw**
Adversary Proceeding Number: **16-80151-jw**

# ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT AND AWARDING PLAINTIFFS' FEES AND COSTS

The relief set forth on the following pages, for a total of 12 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**02/21/2017**



*/s/ John E. Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 02/21/2017

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re:<br><br>Francis Melvin Brewer and Sandra Lane Brewer,<br><br>　　　　　　　　　　　　　　Debtors. | C/A No. 09-02291-JW<br><br>Adv. Pro. No. 16-80151-JW<br><br>Chapter 13 |
| Francis M. Brewer and Sandra L. Brewer,<br><br>　　　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>HSBC Mortgage Services, Inc.,<br><br>　　　　　　　　　　　　　　Defendant. | |

**ORDER GRANTING DEFENDANT'S MOTION TO SET ASIDE CLERK'S ENTRY OF DEFAULT AND AWARDING PLAINTIFFS' FEES AND COSTS**

This matter comes before the Court on the motion of defendant HSBC Mortgage Services, Inc. ("Defendant") to set aside the Clerk's entry of default entered against it on December 6, 2016 ("Motion"). Plaintiffs Francis and Sandra Brewer (collectively "Plaintiffs"), objected to the relief sought by Defendant.

After reviewing the record, including the memoranda filed by the parties, and considering the arguments of counsel, the Court grants the relief requested by Defendant and makes the following Findings of Fact and Conclusions of Law.[1]

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are so adopted.

## FINDINGS OF FACT

1.  Plaintiffs filed the above-captioned adversary proceeding on October 20, 2016. The adversary complaint ("Complaint") seeks damages against Defendant pursuant to 11 U.S.C. § 105 for contempt of the confirmation order, and damages for violation of the § 524 discharge injunction.[2] Plaintiffs allege that notwithstanding the terms of their confirmed Chapter 13 plan,[3] after Plaintiffs received their discharge on March 11, 2014, Defendant failed to mark its second mortgage satisfied. Plaintiffs further allege that both they and their attorney repeatedly contacted Defendant and asked that the second mortgage be satisfied, but Defendant ignored their requests. Because Defendant failed to satisfy the second mortgage when asked, Plaintiffs were unable to refinance the Property in 2016, and have suffered damages.

2.  As evidenced by the certificate of service filed with the Court on October 24, 2016, Plaintiffs served Defendant with the Complaint and Summons on October 24, 2016, by mailing a copy of the pleadings to Defendant's registered agent for service of process.

3.  November 28, 2016, was the deadline for Defendant to answer or otherwise respond to the Complaint.[4]

4.  On December 6, 2016, Plaintiffs' counsel filed a Notice of Motion and Motion for Default Judgment, and accompanying Affidavit of Default (collectively "Default Package"). The Default Package was served on Defendant's registered agent for service of process by mail on December 6, 2016.

---

[2] Hereinafter, all references to provisions under the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, shall be by section number only.

[3] Plaintiffs' confirmed Chapter 13 plan valued Defendant's second mortgage on Plaintiffs' residence ("Property"), and treated Defendant as an unsecured creditor.

[4] *See* Fed. R. Bankr. P. 9006.

2

5.     On December 6, 2016, the Clerk of Court filed an "Entry of Default" against Defendant pursuant to Federal Rule of Bankruptcy Procedure 7055 ("Clerk's Entry of Default"). The Clerk's Entry of Default was served on Defendant on December 8, 2016.

6.     Neither an Order of Default nor an Order for Default Judgment has been entered in the case.

7.     On December 23, 2016, Defendant filed its Motion to Vacate the Clerk's Entry of Default ("Motion"). With the Motion, Defendant submitted the Declaration of Elise Thomas ("Thomas Declaration"). Ms. Thomas is an employee of Defendant responsible for "monitoring, managing the defense of, and attempting to resolve adversary proceedings," and who is assigned to handle this case. In her declaration, Ms. Thomas states that she first learned of Plaintiffs' allegations against Defendant on November 17, 2016, when she received a copy of the Summons and Complaint.[5] The Thomas Declaration further states that upon her receipt of the Complaint, Ms. Thomas reviewed the same and, on November 29, 2016, filed the requested mortgage satisfaction.[6] On November 30, 2016, Ms. Thomas appears to have contacted Plaintiffs' counsel's office in an unsuccessful attempt to resolve this matter. Also on November 30, 2016, Ms. Thomas faxed Plaintiffs' counsel a copy of the unrecorded mortgage satisfaction.

---

[5] Defendant does not contend that service of the Summons and Complaint was improper, nor does it allege that service was not made upon its registered agent for service of process. Instead, in its Motion, Defendant assumes sole responsibility for its failure to timely answer the Complaint.

[6] It appears from the exhibits to the Thomas Declaration that Defendant mailed the mortgage satisfaction to the Beaufort County Register of Deeds on November 28, 2016. The Register of Deeds recorded the mortgage satisfaction on November 29, 2016, and presumably returned a filed copy of the satisfaction to Defendant.

3

**CONCLUSIONS OF LAW**

Federal Rule of Civil Procedure 55(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7055,[7] provides that "[w]hen a party against whom a judgment for an affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a) ("Rule 55(a)"). An entry of default pursuant to Rule 55(a) is not a judgment. Instead, the entry of default "is simply a notation entered by the clerk of the court that a defendant has failed to file an answer." *In re Valley Food Services, LLC*, 377 B.R. 207, 212 n.5 (8th Cir. B.A.P. 2007); *In re Thornton*, 419 B.R. 787, 792 (Bankr. W.D. Tenn. 2009) ("[An] entry of default, as opposed to entry of a default judgment, is 'no more than an interlocutory act looking toward the subsequent step, an entry of a final judgment by default.'") (internal citation omitted); *see also* 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *et al.*, *Federal Practice and Procedure* § 2692 (4th ed. 2016)[8] ("The entry [of default] simply is an official recognition of the fact that one party is in default, as, for example, for failure to comply with the rules, to appear as scheduled, or to prosecute the case with due diligence. The entry is an interlocutory step that is taken under Rule 55(a) in anticipation of a final judgment by default under Rule 55(b).").

Subsection (c) of Rule 55 provides that the Court "may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c). The "good cause" standard, which is more lenient on the defaulting party than the "excusable neglect" standard that is used by courts when considering requests for relief from default judgments under Rule 60, should be liberally

---

[7] Hereinafter, "Bankruptcy Rule."

[8] Hereinafter "Wright and Miller."

4

construed. *See Canopius US Ins., Inc. v. Middleton*, 2016 WL 128517, at *2 (D.S.C. Jan. 12, 2016) ("[A] party attempting to have a default judgment set aside bears a heavier burden than a party that is simply in default."); *Palmetto Fed. Sav. Bank of S.C. v. Indus. Valley Title Ins. Co.*, 756 F. Supp. 925, 931 (D.S.C. 1991), *vacated at parties' request as part of a compromised settlement*, 1991 WL 832830 (D.S.C. May 15, 1991) (same); *Stevenson v. The Student Loan Corp.* (*In re Stevenson*), Adv. Pro. 95-8074-jw, Case No. 95-71026-jw (Bankr. D.S.C. Sept. 26, 1996) (unpublished) (good cause standard is more liberal than excusable neglect standard); *In re Price*, 388 B.R. 901 (Bankr. E.D. Ark. 2008) (good cause standard is more lenient on the defaulting party).

When deciding whether "good cause" exists to vacate an entry of default, the Court considers the following factors, with no single factor given greater weight than another:[9]

(1) whether the defaulting part acted promptly in seeking to set aside the default;

(2) whether the defendant has a meritorious defense to the plaintiff's claims;

(3) the personal responsibility of the defaulting party;

(4) whether the plaintiff would be prejudiced if the default is set aside;

(5) whether the defaulting party has a history of dilatory action; and

(6) the availability of less drastic sanctions.

*Colleton Prep. Acad., Inc. v. Hoover Universal, Inc.,* 616 F.3d 413, 417 (4th Cir. 2010); *Canopius US Ins., Inc. v. Middleton*, 2016 WL 128517, at *2 (D.S.C. Jan. 12. 2016). When making its decision, the Court is mindful that the law disfavors default judgments, and mindful of the judiciary's general policy favoring decisions based on the merits. *Tazco, Inc. v.*

---

[9] *See Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984) ("these grounds for relief often overlap, and it is difficult if not inappropriate in many cases to specify or restrict the claim for relief to a particular itemized ground . . . .").

5

*Director, Office of Workers Comp. Program, U.S. Dept. of Labor*, 895 F.2d 949, 950 (4th Cir. 1990); *see also Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969) and cases cited therein. Thus, "[a]ny doubts about whether relief should be granted should be resolved in favor of setting aside the default so that the case may be heard on the merits." *Tolson*, 411 F.2d at 130; *see United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("the clear policy of the Rules is to encourage disposition of claims on their merits . . . [and] trial judges are vested with discretion, which must be liberally exercised, in entering such judgments and in providing relief therefrom") (internal citation omitted).

The parties agree that Defendant acted promptly when it filed its Motion seventeen (17) days after the filing of the Clerk's Entry of Default. Furthermore, Defendant concedes that it bears the sole responsibility for its failure to timely respond to the Complaint. The parties disagree regarding the remaining factors; therefore, the Court will consider them in turn:

    1.    **Meritorious Defense**. When considering whether the defaulting party has a meritorious defense, the Court must determine "whether there is some possibility that the outcome [of the case] . . . after a full trial will be contrary to the result achieved by the [entry of] default." *Augusta Fiberglass Coatings, Inc. v. Fodor Contr. Corp.,* 843 F.2d 808, 812 (4th Cir. 1988) (citing 10C Wright and Miller, *Federal Practice and Procedure* § 2697 (2d ed. 1983)). This "requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Id.*; *accord United States v. Moradi,* 673 F.2d at 727; *Ramussen v. Am. Nat'l Red Cross*, 155 F.R.D. 549, 552 (S.D. W. Va. 1994) (a "tenuous" defense may be sufficient if the court can discern the possibility that the defendant may be able to vindicate his claim); *DirecTV, Inc. v. Aiken*, 2004 WL 547221, at

6

*2 (W.D. Va. March 16, 2004) ("While the bare allegation of a meritorious defense [without more] is insufficient, the defendant's burden is minimal.").

On this factor, Defendant directs the Court to the case of *In re Dendy*, 396 B.R. 171 (Bankr. D.S.C. 2008), which Defendant argues is directly on point with the case at bar, and provides a complete defense to this action. In *Dendy*, this Court was asked to impose sanctions on a second mortgage creditor who had failed to satisfy its stripped off mortgage lien. Denying the debtors' request for relief under both §§ 105 and 524, this Court held that the mortgage creditor did not violate the discharge injunction or the confirmed plan when, without more, it failed to take any action to release, satisfy, or cancel its mortgage lien. *Id.* at 178-81.

Although counsel indicated at the hearing that he had not had the opportunity to review *Dendy*, Plaintiffs disagree that Defendant has a meritorious defense. Plaintiffs argue that, having admitted in its Motion the critical facts that form the basis of the relief Plaintiffs seek,[10] it is impossible, as a matter of law, for Defendant to have a meritorious defense to the Complaint.

While the Court notes the *Dendy* case, there may be differences between the plan and confirmation order in this case and the *Dendy* plan and confirmation order that will distinguish the two cases from each other. However, that issue will be determined at trial, and is not ripe for determination at this time. While Plaintiffs may be successful in pointing to distinctions between this case and *Dendy*, Defendant's burden of showing a meritorious defense is low. *See Moradi, supra*. It appears to the Court that Defendant has proffered sufficient evidence of the existence of an affirmative, meritorious defense to satisfy its burden on this factor.

---

[10] Defendant concedes that it had actual knowledge of the Plan and its contents, that it failed to object to the Plan, that it had actual knowledge that Plaintiffs were discharged, and that it did not satisfy the second mortgage until November 29, 2016.

7

2. **Prejudice to Plaintiffs**. Defendant asserts that Plaintiffs will not be prejudiced if Defendant is permitted to answer the Complaint. In contrast, Plaintiffs argue that they are, and have been, prejudiced by Defendant's failure to timely respond to their requests that the second mortgage be satisfied. Plaintiffs also argue that this prejudice will continue if the default is set aside.

It is clear that because Defendant failed to timely respond, Plaintiffs incurred costs and attorney's fees associated with the preparation and submission of the Default Package and responding to the Motion. However, these expenses and costs can be remedied by the Court's award of attorney's fees and costs.

It is additionally true that if the Court vacates the Clerk's Entry of Default, Plaintiffs will experience delay in the ultimate adjudication on the merits of their claim. However, the fact of delay in the litigation, in and of itself, is not a sufficient basis for establishing prejudice to prevent the setting aside of an entry of default. *See Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990) (plaintiff's delay in recovering if a default is set aside and a trial held is not a sufficient basis to establish prejudice).

Having reviewed the record, the Court finds that there is no evidence that Plaintiffs will be prejudiced in their prosecution of this adversary proceeding if the Motion is granted. There are no allegations or evidence of spoliation, increased difficulties of discovery, nor any assertion that setting aside the Clerk's Entry of Default will either impair Plaintiffs' ability to litigate their claims or impose on them an unreasonable burden. *Id.*; *see* Wright and Miller, *supra*, at § 2699. Defendant has sufficiently met its burden on this factor.[11]

---

[11] The conclusion that Plaintiffs will not be procedurally prejudiced if the Clerk's Entry of Default is set aside should not be construed as a finding that Plaintiffs were not negatively impacted by Defendant's actions prior to the commencement of this adversary proceeding.

3.      **History of Dilatory Action**.   Plaintiffs argue that Defendant has been unforgivably dilatory in its dealings with Plaintiffs and their counsel, and that this weighs against granting the Motion.

While Defendant admits its failure to timely answer the Complaint, the Thomas Declaration states that upon Ms. Thomas' receipt of the Complaint, she satisfied the second mortgage and attempted to contact Plaintiffs' counsel to address the issues raised in the Complaint and to reach a settlement.  Upon learning of the Clerk's Entry of Default from the Court's website, Defendant contacted its counsel, who promptly filed the Motion.

Although Defendant may have a history of dilatory conduct in connection with Plaintiffs' request that it satisfy the second mortgage, there is nothing in the record to indicate that Defendant has a history of dilatory conduct in connection with the litigation of this adversary.  *See, e.g., Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 953 (4th Cir. 1987) (vacating a default judgment, in part because evidence of dilatory action, "was not drawn out, and continued at the most for a time span of only a few months.").[12]  While not timely responding to the Complaint, Defendant appears to have filed the mortgage satisfaction before the entry of default and attempted to notify Plaintiffs' counsel.

4**.      Less Drastic Sanction.**  Plaintiffs did not ask the Court to impose a sanction on Defendant as a condition of relieving it from the Clerk's Entry of Default.  Instead, Plaintiffs ask the Court to enter judgment against Defendant for the damages claimed in the

---

[12] The proper focus for this analysis is Defendant's actions in connection with the procedural issue before the Court, not the allegations that go to the merits of the case. *See, e.g., Pinpoint IT Serv., L.L.C. v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 727 (E.D. Va. 2011) (finding evidence of dilatory conduct on the part of defaulting defendant when it not only failed to file a timely answer, but also failed to timely file its memorandum in opposition to plaintiff's motion to certify entry of default); *In re Griffith*, 2013 WL 5429872, at *3 (Bankr. D. Md. Sept. 30, 2013) (denying debtor's motion to vacate default entered in adversary proceeding, citing the fact that debtor had been dilatory "on numerous occasions throughout his bankruptcy case," including failing to timely answer two adversary complaints and failing to reply to plaintiff's motion to strike).

Default Package (in effect, Plaintiffs ask the Court to sanction Defendant for its delay in answering by granting Plaintiffs' judgment on the merits). Defendant argues, and this Court agrees, that imposition of a lesser sanction is appropriate in this case. *See Chandler Leasing Corp. v. Lopez*, 669 F.2d 919, 921 (4th Cir. 1982) (less drastic sanctions include payment of costs or attorney's fees); *Hovis v. ITS, Inc.* (*In re Air South Airlines, Inc.*), Case No. 97–07229–W, Adv. Pro. No. 99–80166–W, slip op. at 4 (Bankr. D.S.C. Sept. 1, 1999) (awarding plaintiff attorney's fees and costs incurred in the preparation and filing of the default and order for judgment, and defense of the defendant's motion for relief from the default judgment). To this end, upon their submission of a fee affidavit,[13] the Court will issue its order awarding Plaintiffs the reasonable attorney's fees and costs incurred in seeking a default judgment, in preparing, prosecuting and arguing their objection to the Motion, and in documenting their fees and costs in compliance with this Order.

## CONCLUSION

Based on the foregoing, it is therefore:

ORDERED that Defendant's motion is granted, and the Clerk's Entry of Default is hereby vacated. Defendant shall file and serve its answer or other responsive pleading to the Complaint within ten (10) days of entry of this Order. *See* Fed. R. Bankr. P. 7012;

IT IS FURTHER ORDERED that within ten (10) days of entry of this order, counsel for Plaintiffs may submit an Affidavit of Attorney's Fees and Costs ("Affidavit"). Defendant's response to the Affidavit, if any, shall be filed within five (5) days thereafter.

---

[13] The fee affidavit should include a breakdown of the fees and costs incurred by Plaintiffs in connection with the preparation, submission, and service of the Default Package, the Motion, and complying with the terms of this Order. The fee affidavit should also include the fees incurred by Plaintiffs in connection with preparation for and oral arguments at the hearing on the Motion.

Upon its receipt of the Affidavit and any response thereto, the Court will issue a further order awarding Plaintiffs' fees and costs.

**AND IT IS SO ORDERED.**